UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DWL INTERNATIONAL, LLC,

    Plaintiff,

    v.

YRC LOGISTICS GLOBAL, LLC,

    Defendant.

No. 10 C 1560
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Plaintiff DWL International, LLC ("DWL") filed its complaint against Defendant to enjoin arbitration proceedings and obtain a declaration that no valid International Agency Agreement or arbitration agreement exists between the parties. Defendant, YRC Logistics, LLC ("YRC") now moves to compel DWL to engage in arbitration, pursuant to the Federal Arbitration Act, 9 U.S.C. § 3-4. For the following reasons, Defendant's motion to compel arbitration is denied.

## I. BACKGROUND

DWL seeks to enjoin an arbitration proceeding that was initiated in September of 2009. DWL is a Dutch limited liability corporation that provides forwarding and logistic services. YRC is a United States freight forwarder and a shareholder of JHJ, a Chinese non-vessel operating common carrier that provides transportation and logistics services between the People's Republic of China and various other countries.

YRC sought to initiate an arbitration proceeding against DWL based on an arbitration clause contained in an executed International Agency Agreement ("Agreement") between the parties. DWL denies that it ever signed or agreed to be bound by the Agreement. Instead, DWL

contends that business between the parties was governed by the Dutch Forwarding Conditions. E-mails between Sean Burke ("Burke"), Vice President, Business and Service Development, Asia, for YRC and Pieter Dubbeld ("Dubbeld"), the Director of DWL, discussed the terms of the Agreement. None of the e-mail communications submitted to the Court contains objections to signing the Agreement. Dubbeld indicated in an e-mail to Burke that he would bring an executed copy of the Agreement to a meeting in Shanghai, China. Dubbeld denies that he presented YRC with a copy of the Agreement signed by DWL in Shanghai, or at any other time. Two signatures appear on the Agreement, allegedly of Dubbeld and Paulus Wetzels ("Wetzels"). Both Dubbeld and Wetzels have submitted affidavits denying that the signatures that appear on the Agreement are their own. Nonetheless, the parties began doing business on a limited basis with respect to one account.

The dispute underlying the arbitration involves DWL's alleged improper release of cargo. In July, 2008 DWL and Defendant discussed an arrangement whereby DWL would act for YRC in arranging for and providing logistic services, including ocean carriage. In late 2008, JHJ consigned certain containers to DWL. Those containers were transported pursuant to JHJ's bills of lading. DWL allegedly released the cargo without collecting original JHJ bills of lading, violating the Agreement and internationally recognized shipping procedures. JHJ was sued in China by the shippers of the goods. DWL did not indemnify and hold JHJ and YRC harmless from damages resulting from breach of the Agreement. DWL denies that it is bound by either the Agreement or the arbitration provision contained therein.

On September 23, 2009 JHJ/YRC made an arbitration demand upon DWL. JHJ/YRC designated Manfred W. Arnold to act as arbitrator and proposed submitting the dispute to the

arbitration on documents alone. On October 12, 2009, DWL's counsel, Marc Padberg, responded to the arbitration demand stating that "without any prejudice as far as DWL's defense is concerned," it accepted JHJ/YRC's proposal of arbitrator and agreed to resolve the dispute based on documents alone.

On November 2, 2009 JHJ/YRC set forth the basis of its claim and requested that DWL provide information as to the basis for any defenses or claims it intended to assert in the arbitration. Following this request, DWL sought to retain an attorney in the United States to handle the arbitration, and on December 22, 2009, retained Jonathan Bunge ("Bunge"). DWL also requested a copy of the Agreement which was sent on the same day via e-mail. On December 24, 2009, Bunge thanked Collins for the signed Agreement and stated that DWL did not believe JHJ was a party under the Agreement, and therefore was not entitled to a demand of arbitration. When the executed Agreement was forwarded to Wetzels and Dubbeld, the DWL representatives who allegedly signed the Agreement, they each denied that they had signed the Agreement. DWL objected to proceeding with the arbitration on January 4, 2010, January 28, 2010, January 29, 2010, and February 2, 2010 and further objected to the suggested briefing schedule. YRC submitted its brief to the arbitrator on January 8, 2010. DWL did not submit any brief to the arbitrator and instead filed its complaint to enjoin the arbitration proceedings on March 9, 2010.

## II. STANDARD OF REVIEW

Pursuant to Section 3 of the Federal Arbitration Act, a court shall stay any suit in which the issue forming the basis of the suit is subject to arbitration pursuant to a written agreement. 9 U.S.C. § 3. The Federal Arbitration Act further instructs courts to order arbitration "upon being

satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. § 4. The stay must last until the arbitration has been completed under the terms of the agreement. *Id*. at § 3. Where a party alleged that there is no agreement to arbitrate because no agreement was executed, it is for the court to decide whether the agreement was formed. *Will-Drill Resources Inc. v. Samson Resources Co.*, 352 F.3d 211, 216 (5th Cir. 2003).

## III. DISCUSSION

YRC argues that DWL is subject to the arbitration for two reasons. First, YRC contends that even if the Agreement was not properly executed, DWL has waived its right to dispute arbitration. Second, YRC argues that because the Agreement was validly executed, DWL is bound by the arbitration provisions contained therein. Neither of these two arguments is successful.

### A. DWL Did Not Waive Its Right to Contest Arbitration.

When a party "voluntarily and unreservedly submits an issue to arbitration, he cannot later argue that the arbitrator had no authority to resolve it." *Jones Dairy Farm v. Local No P-1236, United Food and Comm. Workers Int'l Union, AFL-CIO*, 760 F.2d 173, 175-76 (7th Cir. 1985). YRC argues that DWL waived any right to dispute the terms of the arbitration clause within the Agreement by submitting to the arbitration. Specifically, YRC points to three instances of waiver. First, DWL argues that YRC did not dispute the arbitration clause during negotiations. Second, YRC states that Dubbeld consented to sign the Agreement. Finally, YRC states that DWL consented to the arbitration by agreeing to the arbitrator Manfred W. Arnold and agreeing to proceed with the arbitration based solely on documents.

4

DWL has not unreservedly submitted to arbitration. The cases referenced by Defendant are factually distinct from the case at hand because, in those cases, the arbitration process had been substantially commenced, or completed, prior to objections to arbitrability being made. For example, in *Comprehensive Accounting Corporation v. Rudell*, appellees refused to participate in the arbitration resulting in an award of damages and equitable relief being entered against them. 760 F.2d 138, 139 (7th Cir. 1985). The district court entered an order enforcing the arbitrator's award and the Seventh Circuit affirmed. The Seventh Circuit noted that it was "too late for them" because only after the arbitration was over did they say: "oh by the way, we never agreed to the arbitration clause." *Id*. at 140. Likewise, in *Jones Dairy Farm*, appellee brought suit to set aside an arbitration award. 760 F.2d at 174. Again, the Seventh Circuit highlighted that appellee submitted to the entire arbitration process, and never refused to arbitrate. *Id*. at 175-76. Specifically, the Court noted that "[b]y going forward with the arbitration without questioning the arbitrator's authority to resolve the dispute Jones Dairy Farm consented to have him decide" its legal rights. *Id*. at 176.

Here, DWL did not submit a brief to the arbitrator, objected to the briefing schedule, and filed the instant complaint to enjoin the arbitration *prior* to the arbitration commencing. Furthermore, the language in various e-mails and letters did not waive any right to object. The response to YRC's demand letter explicitly stated that while it agreed to the selected arbitrator and procedure, it did so only "without any prejudice as far as DWL's defense is concerned." Additionally, the letter sent by Bunge to YRC objecting to the inclusion of JHJ in the arbitration does not constitute a waiver. Although the letter states that "the Agreement is executed only by YRC Logistics Global, LLC ("YRC") and DWL International BV ("DWL")," this letter was sent

5

*prior* to Bunge receiving notice from Wetzels and Dubbeld that the signatures that appear on the Agreement were not their own. Once the authenticity of the signatures was disputed, DWL informed YRC of its concerns, objected to the arbitration proceedings, and filed the instant action. Accordingly, I do not find that DWL submitted to the arbitration or waived its right to contest the arbitration proceedings.

<p style="padding-left: 2em;">B. The Validity of the Signed Agreement Will Be Set For Hearing.</p>

A strong federal policy exists in favor of arbitration. *Samson Resources Co.*, 352 F.3d at 214. This policy, however, does not apply to the determination of whether an agreement to arbitrate is valid. *Id*. Determining whether a valid arbitration agreement exists is a matter for the court, not the arbitrator, to decide. *Id*; *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000). When determining whether parties have agreed to arbitrate, the court must first consider whether there is a valid agreement to arbitrate between the parties. *Samson Resources*, 352 F.3d at 214. Courts have declined to order arbitration where a party asserts that it is not bound by an agreement because of forgery, or because a signator was acting outside the scope of his authority. *Opals On Ice Lingerie v. Body Lines Inc.*, 320 F.3d 362 (2d Cir. 2003) (refused to compel arbitration where signature on agreement was forged); *Sphere Drake Ins. Ltd. v. All Am. Ins. Co.,* 256 F.3d 587 (7th Cir. 2001) (refused to compel arbitration where agent who signed agreement lacked authority to bind the party).

Here, Plaintiff argues that it is not bound to arbitrate because it never signed the Agreement. While the Agreement appears to be executed and contains signatures purportedly of Dubbeld and Wetzels, both men deny that the signatures on the Agreement are their own. Though e-mails sent between Dubbeld and Burke show that negotiations were ongoing, a

question of fact exists as to the authenticity of the signatures on the Agreement. Accordingly, an evidentiary hearing will be held as to the validity of the executed Agreement.

**IV. CONCLUSION**

For the foregoing reasons, Defendant's motion to compel arbitration is denied. An evidentiary hearing will be held on August 25, 2010 at 11:30 a.m. to resolve the dispute regarding the authenticity of the signatures contained in the Agreement.

ENTER:

*James B. Zagel*
James B. Zagel
United States District Judge

DATE: July 30, 2010